IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| KINGDOM WISDOM, LLC )<br>307 Yoakum Pkwy, #1014 )<br>Alexandria, VA, 22304 )<br> ) Case No.<br>*Plaintiff*, )<br> )<br>v. )<br> )<br>GREATER BADEN MEDICAL SERVICES, INC. )<br>7450 Albert Road, Third Floor )<br>Brandywine, MD 20613 )<br> )<br>*Defendants*. )<br> ) | |

## COMPLAINT

Plaintiff Kingdom Wisdom, LLC ("Plaintiff" or "KW"), by and through undersigned counsel, does hereby bring this Complaint against Greater Baden Medical Services, Inc. ("GBMS" or "Defendant"), and alleges and states as follows:

### NATURE OF THE CASE

**1.** The causes and separate counts set forth herein arise under contract between the Parties.

**2.** This court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the parties having residence in different States and the amount in controversy is in excess of the statutory requirements. Furthermore, this Court has personal jurisdiction over the Defendants, who are from this District, and conduct their business herein.

1

3. Venue is proper in this forum, pursuant to 28 U.S.C. § 1391(b), as one or more of the Defendant resides in this judicial district and or a substantial part of the acts or omissions giving rise to the claims herein occurred in the same.

## PARTIES

4. Plaintiff Kingdom Wisdom is a corporation of the Commonwealth of Virginia.

5. Defendant Greater Baden Medical Services is a medical services company operating in various locations in Prince George's County, Maryland.

## GENERAL ALLEGATIONS

6. Plaintiff performs facilities cleaning services for various commercial clients.

7. In April of 2020, the Parties began negotiating contractual agreements to provide general cleaning services at the Defendant's offices, as well as additional work performing COVID19-related disinfecting.

8. The conversations began when the General Counsel for Defendant, Ms. Linda Thomas, and the owner of KW, Mr. Arthur Hawthorne.

9. Ms. Thomas offered to assist Plaintiff in obtaining contracts with her employer, so long as Mr. Hawthorne agreed to pay her kickbacks if the contracts were awarded.

10. On May 1, 2020, and May 8, 2020, the CEO of Defendant, Sonja Bachus, signed, respectively, the COVID19 contract and the "Master Services Agreement," which was for the general cleaning services agreed upon.

11.     Also in May, 2020, Mr. Hawthorne paid Ms. Thomas at least $1,500 directly, via CashApp, at her request, as Ms. Thomas believed that she deserved money for assisting KW in obtaining its contracts with GBMS.

12.     Ms. Thomas, in addition to being the General Counsel of GBMS, was also its Chief Financial Officer.

13.     Mr. Thomas would continue demanding bribes from KW throughout contract performance, with Ms. Thomas regularly demanding bribes in exchange for paying invoices for services that KW had performed and was due payment for.

The Relevant Contractual Clauses

14.     The Master Services Agreement ("MSA") states, in part, that "Performance of the services scheduled shall begin June 8, 2020. Ex. 1, Master Services Agreement, ¶ 1.1, at unnumbered page 1.

15.     The MSA further states that "[t]he term of this Agreement shall be for three (3) years from the date services are scheduled to begin." *Id.*, ¶ 1.2, at unnumbered page 1.

16.     The MSA further states, in Paragraph 2.1, that

> Client agrees to pay to Kingdom Wisdom, LLC each month the total minimum sum stated in the Pricing Schedule, attached hereto as Exhibit A. Kingdom Wisdom will invoice as of the last day of each month the Services rendered for that month. Client agrees to pay for any charges related to a Initial Clean Option (if provided) and any authorized additional cleans options, as described in Exhibit A, and any sales or use tax levied by a taxing authority on the value of the Services or supplies purchased.

*Id.,* ¶ 2.1, at unnumbered page 1.

17.     The MSA further states, in Paragraph 2.5, in part, that

> In the event payment for Services is not received within forty-five (45) days from the date such payment is due, Kingdom Wisdom, LLC may suspend Services to Client until such time Client has paid for all services rendered to day. Any billing invoices questions shall be brought to the attention of the Owner within ten (10) business days of receipt of the invoice. Otherwise, Client will have deemed the invoice to be an accurate invoice ready for payment.

*Id.,* ¶ 2.5, at unnumbered page 1.

    **18.**    The MSA further states, in regards to renewal and termination:

> 4. Renewal and Termination
> 4.1. This Agreement shall be automatically extended and renewed for additional one (1) year terms on the same terms and conditions, unless either party shall give written notice, as described herein or termination at least ninety (90) days prior to the scheduled expiration date.
> 4.2. Notwithstanding the above, either party may terminate this Agreement after the first year by providing written notice of termination at least ninety (90) days prior to the termination date.
> 4.3. Non-performance is defined as the failure to perform any act stipulated under this Agreement. Before any termination for non-performance is effective, the terminating party must give the other party written notice, as described herein, specifying in detail the nature of any defect or failure in performance. Upon the effective date of the receipt of notice of non-performance, the non-terminating party shall have thirty (30) days in which to cure the defect in performance (the "Cure Period") to the reasonable satisfaction of the terminating party. In the event the defect is not satisfactorily cured within the Cure Period, the terminating party shall provide written notification to the non-terminating party of the failure to satisfactorily cure the defect. In the event the second notice is not received within five (5) days from the end of the Cure Period, all deficiencies shall be deemed cured.
> 4.4. All notices between Client and Kingdom Wisdom, LL shall be in writing. Any notice shall be deemed duly served if such notice is deposited, postage prepaid and certified, with the United States Postal Service, or a recognized common parcel courier providing express, receipted delivery to the address stated on the signature page of this Agreement for Kingdom Wisdom, LLC or Client. An email notice shall be deemed acceptable if provided to the authorized representatives(s) of each party. All other notices, including notices personally delivered to individuals performing services under this Agreement, shall be ineffective. Either party

>   may change the address of notice by providing the other party written notice of such change.  Time is of the essence for all notices required under the terms of this Agreement.

*Id.*, ¶ 4.1, at unnumbered pages 1-2.

19. .The MSA further states:

>   In the event it becomes necessary for either party to institute suit against the other to secure or protect the rights under this Agreement, the prevailing party shall be entitled to all associated costs of the suit, including reasonable attorney's fees, administrative fees, court costs and damages as part of any judgment entered in its favor.

*Id.*, MSA, ¶ 7.1, at unnumbered page 2.

20. The MSA further states

>   The parties acknowledge that this Agreement and the exhibits supersede all prior agreements, representations and understandings of the parties.  No change to this Agreement will be effective unless signed by authorized representatives of both parties and attached hereto.

*Id.*, MSA, ¶ 7.6, at unnumbered page 2.

21. Exhibit A to the MSA states, in relevant part:

>   A.3. All communications with Client shall be handled by Owner, Arthur Hawthorne III with Client Facilities and Safety Manager, Terrrance Burrell or another GBMS designee.

*Id.*, MSA, Ex. A, at unnumbered page 1.

<u>Kingdom Wisdom Performs the Work of the Contracts</u>

22. On June 1, 2020, Plaintiff commenced the work under the COVID disinfecting contract, and on June 8, 2020, Plaintiff commenced work under the MSA.

23. On July 29, 2020, Director of Facilities for Defendant, Terrance Burrell, informed Kingdom Wisdom that his leadership would like to modify the COVID-19 contract for bi-weekly services instead of weekly.

24. On August 13, 2020, Mr. Burrell emailed the new COVID contract to Plaintiff.

25. Shortly after performance commenced, KW issued daily checklists for the GBMS cleaning sites, as well as preparing weekly reports on issues.

26. While Mr. Burrell, who vacillated between micro-managing performance and not being available for resolution of issues KW needed resolved to perform the contracts, did at time to time direct KW to remedy minor details of performance, at no time during contract performance did KW receive any notification that identified itself as raising a default-level non-performance issue, nor did in fact any issue arise that would have justified such a notification, as all issues were addressed promptly.

27. What Mr. Burrell did do, by his own admission, was, at on no less than two occasion, deliberately place trash in trash containers that had already been emptied by KW staff and or place what he called "markers" in areas, in area that had already been cleaned, and photograph the same, in an frankly strange attempt to prove that KW was not performing its contractual duties.

28. At no time did GBMS object to any KW invoices or raise any "questions" regarding them, as it was allowed to under the MSA, Section 2.5. The invoices were therefore "deemed accurate" under the MSA Paragraph 2.5, *supra*, and therefore no performance issues were or could have been significant enough to justify non-payment.

29. Invoices were not, however paid on time by GBMS. This was because Ms. Thomas, who, in addition to being GBMS's General Counsel, was also its Chief Financial Officer, and therefore in charge of payments to vendors, consistently demanded

bribes from Mr. Hawthorne in order to process those same payments for services that KW fully performed and properly invoiced.

30. Because of this, KW consistently received payments far later than forty-five days, which is outside the time limit of the MSA, Paragraph 2.5, *supra*. Thus, KW's very first invoice, for June 2020 services, was paid 48 days after submission, the invoice for July 2020 services was paid 51 days after submission, the October 2020 invoice was paid 51 days after submission, KW's November 2020 invoice was paid 50 days after submission, the December invoice was paid 48 days after submission, and the January invoice was paid 48 days after submission.

31. Despite the fact that Defendant consistently breached the MSA by failing to pay within 45 days, Plaintiff did not suspend performance at any time, despite its contractual authority to do so under the MSA, Paragraph 2.5.

32. To the extent that, *arguendo*, there was any failure of performance by Plaintiff in the months of July 2020, August 2020, November 2020, December 2020, and January 2021, Plaintiff was justified in and allowed to non-perform under Paragraph 2.5 of the MSA, due to the Defendant's failure to pay within the contract period.

<u>KW Receives an Abrupt Non-Performance Notification, and is then Terminated During the Cure Period</u>

33. On December 14, 2020, without warning, Mr. Burrell emailed a "Notice of Non-Performance" letter signed by CEO Sonia Bachus, with an attached screen shot to Mr. Hawthorne.

34. The letter stated:

> Dear Mr. Hawthorne,
> Greater Baden Medical Services, Inc. has not received a response
> to the attached message regarding the most recent issues with the

> daily cleaning service. We have consistently had issues with non-performance at Brandywine, Capitol Heights and Oxon Hill and have detailed the specific issues each time. Additionally, we met to discuss the cleaning service expectations. Unfortunately, we continue to experience various issues, with the most recent issues outlined in the attached email.
>
> Terrance Burrell, Facilities Manager, communicated cleaning issues via email on Aug 18, Sept 8, Sept 16, Sept 23, Sept 29, December 7 and possibly a few other times via text. Given that we continue to have issues with the non-performance and defect in performance of items specified in the contract attachment Proposal for Cleaning Services, this is your Notice of Non-Performance under Section 4.3 of the Master Service Agreement. Per the Agreement, Kingdom Wisdom has thirty days from the date of this Notice to cure the defect in performance. If the defect is not satisfactorily cured within the Cure Period, GBMS will provide written notification to Kingdom Wisdom of its failure to cure the defect and this Agreement will terminate within 30 days of the second notice.
>
> Should you have any questions or need further clarification, please contact Terrance Burrell at your convenience.

Ex. 2, true and accurate copy of Letter of S. Bachus to A. Hawthorne, Dec. 14, 2020.

35. No other information specifying the alleged defaults was provided at that time, or indeed prior to termination.

36. Plaintiff notes that, under the MSA, any notice of non-performance not followed up by a second notice within five days of the expiration of the thirty-day cure period is deemed cured. Ex. 1, MSA, ¶ 4.3, at 2.

37. Therefore, this letter's citation to communications from August 18, September 8, September 16, September 23, and September 29 was irrelevant, as none of those alleged "non-performance notices" were followed up with a second notice within

five days of the expiration of the thirty day cure period, and therefore any issue raised therein was deemed cured.

38. On December 21, 2020, KW e-mailed a respond to the "Non-Performance" letter.

39. In that December 21, 2020, letter, Mr. Hawthorne stated, as an initial matter, that

> [t]he letter asserts that Kingdom Wisdom has not satisfactorily performed services. It was very startling to receive such communication, as the staff and facility/site managers have consistently commended us on the strong work that our staff are providing. Moreover, we were under the impression that a team approach to this work had been established, as we did not dwell on late invoice payments (beyond 45 days), which have been constant (without interruption) since July 2020 including the current payment (beyond 51 days); yet we never suspended services. ~ see footnote below for Master Contract Agreement language from Section 2.5.

Ex. 3, true and accurate copy of letter of A. Hawthorne to S. Bachus, Dec. 20, 2020, at unnumbered page 1.

40. Substantively, the KW response letter noted that the Non-Performance letter did not specify in detail what performance issues existed, noting that the Non-Performance Letter statement that it had "consistently had issues with non-performance at Brandywine, Capitol Heights and Oxon Hill and have detailed the specific issues each time" was not backed up by any actual citation to the alleged messages:

> This is an overly broad and ambiguous statement. Please provide specifics that include dates and times of alleged non-performance so that we can address how said issues have been addressed. Without an evaluative tool for cleaning services, it is impossible for us to glean what GBMS' is referencing regarding deficiencies. We have repeatedly requested such a tool but have not received feedback to date. Without a baseline to determine the standard by which GBMS' team is evaluating our delivery of cleaning service

at each facility; the efficacy of such broad and unsubstantiated assessments is null and void.

*Id.*, at unnumbered page 2.

    **41.**    The KW response letter described the performance issues, to the extent there were any, as being the result of inconsistent instruction and supervision – and offered concrete solutions to make sure any performance issues were quickly and fairly identified and addressed:

> To date we have had limited communication with CEO Sonja Bachus and ongoing communication has primarily been with the GBMS' Facilities Manager Terrance Burrell. In our communication efforts with Mr. Burrell, he lacked interest in quality assurance measures that required his attention prior to our services. For instance, as we were preparing to launch additional services in September 2020 at the Capitol Heights – WIC location, we shared with Mr. Burrell that spider abatement must precede deep cleaning services. He responded abrasively and was not willing to accept our recommended expertise to resolve the matter. It is our hope that Mr. Burrell works with us to resolve issues in the future, in a better way. We are invested in providing a service to the community and staff during these trying times. Strength-based feedback is essential.
>
> Solution: An innovative approach to the evaluation of services by implementing a "360-degree" assessment would solidify clarity and transparency. We have no idea what Mr. Burrell is seeking from week to week. It appears that the finish line continues to move, without input from our team. There is no formal process in place to monitor performance. While we do not claim that our services are flawless, we do expect reasonable communication and effective feedback from Mr. Burrell as we strive to continually improve our service delivery model. Conversely, feedback from other GBMS site/operations managers and staff highlights the accolades for our quality work at their respective sites.
>
> Recommendations: Kingdom Wisdom recommends the following:
>
> A monthly communication is established to share best practices;
> A collaborative approach is memorialized regarding expected deliverables;

> An appraisal tool is developed by GBMS and Kingdom Wisdom; and
> All payment delinquencies are resolved by December 30th.
>
> In sum, the "Notice of Non-Performance" letter is largely rooted in untenable assertion of our company's performance. Kingdom Wisdom, LLC disputes the allegations raised by Mr. Burrell, but welcomes the opportunity to address any issues that you believe may exist. In this regard, please provide us with a list of items that you believe need to be addressed. At this point, there is no formal tool for assessment. We have responded to all of Mr. Burrell's email requests. Moreover, the laudatory and complimentary feedback from GBMS site-based staff affirms the strong efforts that we put-forth daily. Finally, with the community conscious GBMS Board of Directors that has members who are well-respected throughout the community - we are confident that the administrative team will develop an amicable and streamlined resolution for all parties as we move forward in 2021.

*Id.*, at unnumbered pages 2-3.

42. On January 6, 2021, KW sent an e-mail to Mr. Burrell requesting an evaluation of the services it was providing to Defendant. KW had attempted to make a request for performance evaluation to another GBMS official, but Mr. Burrell blocked the request and asked that all requests go through him.

43. Defendant never responded to this e-mail.

44. January 11, 2021, was the deadline for the second non-performance notice for the alleged December 7, 2020, notice of non-performance (as identified in the Non-Performance Letter of December 14, 2020), but no second notice was received. The allegations of non-performance, such as they were, on December 7, 2020, were therefore deemed cured under the MSA, Paragraph 4.3.

45. On January 13, 2021, Mr. Burrell emailed a termination notice to KW signed by CEO Sonia Bachus.

46. On January 26, 2021, Plaintiff e-mailed a response to GBMS regarding the Termination letter sent on January 13th. No response was received from this email.

47. On February 10, 2021, Mr. Burrell requested that KW add another site to the COVID sanitation contract to be done on the regular rotation.

48. On February 12, 2021, Defendant served Plaintiff with a termination letter for the MSA, via outside counsel. KW staff was instructed to leave the building after close of business on February 12, 2021, and not to return.

## BREACH OF CONTRACT

49. The Plaintiff hereby readopts and re-alleges the allegations set forth in the above Paragraphs, as if restated fully herein.

50. The Parties had two binding contracts between them, the COVID19 disinfecting contract and the MSA.

51. GBMS breached both of those contracts by act and omissions, including, but not limited to, by issuing default notices without "specifying in detail the nature of any defect or failure in performance," by attempting to use communications that were not in fact notices of non-performance as such, by using communications that were over thirty days old, and therefore not valid as first notices of non-performance under the MSA, Paragraph 4.3 ("In the event the second notice is not received within five (5) days from the end of the Cure Period, all deficiencies shall be deemed cured."), as pretext for default, by failing to provide the full Cure Period required by the MSA, by failing to timely pay KW virtually every month, by breaching the duties of good faith and fair dealing, and by terminating the contracts without proper notice or justification.

52. Those acts and omissions have directly harmed KW in that it has lost business, and or has lost profits for the remaining twenty-eight months of the contracts,

has lost opportunities to engage in other business ventures, and is owed money for services that were provided and accepted by GMBS.

53. Specifically, KW was harmed by GBMS's breaches of contract as follows:

- Loss of some $257,600.00 in lost profit for the remaining twenty-eight (28) months of the MSA; and
- Loss of some $10,000 in lost payments that would have been due under the COVID-19 Contract, for the improper termination of the same.

54. Furthermore, Plaintiff demands prejudgment interest from the date all monies were due at the contractual and or legal rate, whichever is greater, post-judgment interest at the legal rate, costs of suit, and actual attorney's fees at the "lodestar" rate for this District, pursuant to Paragraph 7.6 of the MSA, reduced to judgment against the Defendant.

### JURY DEMAND

The Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

### *PRAYER FOR RELIEF*

WHEREFORE, the Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against the Defendant as follows:

1. Entry a judgment for Plaintiff and against Defendant in the amount of for breach of contract damages;

2. Entry of an order awarding the Plaintiff pre-judgment interest on its judgment;

3. Entry of an order awarding the Plaintiff its costs and reasonable attorneys' fees and investigative fees associated with bringing this action;

4. Entry of an order awarding the Plaintiff such other and further relief as the Court may deem just and proper.

Dated: April 1, 2021

Respectfully submitted,

/    /s/edwardgriffin/s/    /
Edward Griffin, Esq.
Maryland District Bar Number 16435
ADELPHI LAW
2306 Wineberry Terrace
Baltimore, MD 21209
Telephone 202.361.5346 Fax 888.367.0383
griffin@adelphilaw.com